ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

MAR 2 1 2017

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL ALEXANDER CARRUTH | Criminal Information<br><br>No. 1:17-CR-109 |

THE UNITED STATES ATTORNEY CHARGES THAT:

**Count One**
**(Conspiracy to Commit Bank Fraud, Mail Fraud, and Money Laundering)**

1. Beginning on a date unknown, but at least as of May 2012, continuing through on or about July 2016, in the Northern District of Georgia and elsewhere, the Defendant, PAUL ALEXANDER CARRUTH, did willfully and knowingly combine, conspire, confederate, agree and have a tacit understanding with others known and unknown:

(1) to violate Title 18, United States Code, Section 1344, that is, to commit bank fraud, an offense against the United States, that is to knowingly execute and attempt to execute a scheme and artifice to defraud Wells Fargo, Space Coast Credit Union, Pentagon Federal Credit Union, and other financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation and the National Credit Union Share Insurance Fund, and to obtain and attempt to obtain moneys, funds, credits, assets, and other

properties owned by and under the custody and control of those financial institutions by means of materially false and fraudulent pretenses, representations, and promises, as well as by omission of material facts;

(2) to violate Title 18, United States Code, Section 1341, that is, to commit mail fraud, an offense against the United States, that is to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property through the use of materially false and fraudulent pretenses, representations and promises and material omissions, and, in so doing, cause the United States Postal Service and other private and commercial interstate carriers to be used in furtherance of said scheme and artifice to defraud, with said scheme and artifice to defraud affecting a financial institution; and

(3) to violate Title 18, United States Code, Section 1956, that is, to commit money laundering, an offense against the United States, that is to knowingly conduct and attempt to conduct financial transactions in and affecting interstate commerce, which transactions involved the proceeds of specified unlawful activities, that is, the proceeds of bank fraud, mail fraud, and the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in a controlled substance punishable under a law of the United States, and that, while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and

knowing the transactions were designed in whole and in part to conceal and disguise the nature, source, ownership, and control of proceeds of said unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**Manner and Means**

2. Beginning prior to May 2012, Defendant agreed with other individuals to participate in a scheme to obtain car loans from financial institutions using false pretenses. Specifically, Defendant, acting together with others, recruited individuals with good credit history to act as straw purchasers to obtain car loans. Defendant provided the straw purchasers with purchase orders and other documents including, in many cases, fraudulent pay check earning statements, to present to financial institutions in support of the loan applications.

3. When the loan applications were approved, financial institutions drafted checks representing loan proceeds and transmitted them via the United States Postal Service and other private or commercial interstate carriers to Defendant, others acting with him, or to local financial institution branches where the checks were hand delivered to Defendant or his associates.

4. Defendant and others acting with him deposited proceeds from the loans into bank accounts controlled in part by Defendant, and then transferred the funds to other bank accounts.

5. Additionally, the straw purchasers had no intention to personally possess or use the cars for which the loans were obtained; instead, pursuant to the scheme, the cars were possessed and controlled by Defendant and others acting with him, and then further rented or leased out to other individuals. Neither Defendant nor the straw purchasers disclosed to the financial institutions that the true intent was to transfer the cars to other individuals, sometimes in other states or countries. Defendant and others acting with him accepted cash payments from these individuals for use of the cars, and instructed the users of the cars to deposit funds, frequently cash, into various financial accounts controlled in part by Defendant.

6. Many of the individuals ultimately using the cars were known by Defendant to be drug traffickers. Some of these drug traffickers lived and used the cars in the Northern District of Georgia, and paid for use of the cars by making cash deposits of drug proceeds into bank accounts controlled in part by Defendant.

7. Furthermore, Defendant's scheme often involved straw purchasers obtaining multiple car loans from different financial institutions in a short period of time so that the new loans would not show up on the straw purchasers' credit reports when making new loan applications. As part of the scheme, the straw purchasers did not disclose the recent car loans as debts or financial obligations on their loan applications.

4

8. As a part of Defendant's scheme, payments for the car loans were initially made by Defendant, people working with him, or even the straw purchasers themselves. However, in many cases the payments eventually stopped and the loans became delinquent. When the financial institutions attempted to repossess the cars, because the cars had been transferred to other individuals, sometimes in other states or countries, the financial institutions were unable to locate them.

All in violation of Title 18, United States Code, Section 371.

## Forfeiture

9. As a result of committing the offense alleged in Count One of this Criminal Information, the defendant, PAUL ALEXANDER CARRUTH, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including but not limited to the following:

    (a) MONEY JUDGMENT: A sum of money equal to the amount of proceeds the defendant obtained as a result of the offenses for which the defendant is convicted.

10. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

JOHN A. HORN
*United States Attorney*

*/s/ Garrett L. Bradford*

GARRETT L. BRADFORD
*Assistant United States Attorney*
Georgia Bar No. 074374

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181